UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

---------------------------------------------------------------------x
:
In re the Application of NEXSTAR ESM :
HOLDINGS (CAYMAN), LTD. for an order, pursuant :
to 28 U.S.C. § 1782, to conduct discovery for use in : Case: 1:10-mc-00054-LMB
proceedings pending in (a) the Grand Court of the :
Cayman Islands, Financial Services Division, styled :
*In the Matter of Section 94 of the Companies Law* :
*(2010 Revision)*, and *In the Matter of GFP Dunas* :
*Partners Holdings, Inc.*, Cause No. 218/2010 and (b) :
The Fifth Transitional Civilian Court of Ica, Peru, :
styled *Nexstar ESM Holdings (Cayman) Ltd. v.* :
*Ismael Rodriguez Ayala and Others,* :
*Concerning the Removal of Directors and Managers*, :
Record No. 00841-2010-45. :
:
---------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
NEXSTAR ESM HOLDINGS (CAYMAN) LTD.'S APPLICATION
<u>FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782</u>**

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ........................................................................................................................... 3

    I.    Discovery Obtained As A Result Of This Application Is Admissible In The Peruvian Proceeding ............................................................................... 3

    II.   Deferring To The Cayman Islands Court Is Contrary To Fundamental Section 1782 Principles ............................................................................. 5

        A.   Guggenheim And Venerus' Misrepresentations Regarding The Cayman Islands Proceedings Are No Defense Here .............................. 6

        B.   Guggenheim And Venerus Cannot Avoid Section 1782 Discovery With Their Untimely Offer To Consent To Cayman Islands Jurisdiction ............................................................................................. 8

    III.  Nexstar's Application Is Not A "Fishing Expedition" Or Overly Broad ............. 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*In re the Application of Minatec Finance S.A.R.L.,*
   2008 U.S. Dist. LEXIS 63802 (N.D.N.Y. Aug. 18, 2008) ...................................................... 10

*In re Application of Caratube Int'l Oil Co., LLC,*
   2010 U.S. Dist. LEXIS 81512 (D.D.C. Aug. 11, 2010) .......................................................... 8

*In re Application of Euromepa, S.A.,*
   51 F.3d 1095 (2d Cir. 1995) .............................................................................................. *passim*

*In re Application of Grupo Qumma, S.A. de C.V.,*
   2005 U.S. Dist. LEXIS 6898 (S.D.N.Y. Apr. 21, 2005) ........................................................ 5

*In re Application of Michael Wilson & Partners, Ltd.,*
   2007 U.S. Dist. LEXIS 54624 (D. Colo. Jul. 26, 2007) ........................................................ 9

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf,*
   No. M19-88, 2006 U.S. Dist. LEXIS 94161 (S.D.N.Y. Jan. 4, 2007) ..................................... 9

*Intel Corp. v. Advanced Micro Devices, Inc.,*
   542 U.S 241 (2004) ............................................................................................................... 7

*Kulzer v. Biomet, Inc.,*
   2009 U.S. Dist. LEXIS 101283 (N.D. Ind. Oct. 29, 2009) .................................................... 8

*Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited,*
   2009 CILR 553, 575 (Ct. of App. Sept. 24, 2009) ................................................................ 8

**STATUTES**

28 U.S.C. § 1782 ........................................................................................................... *passim*

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY (5th Abr. Ed. 1983) ............................................................... 10

Nexstar submits this reply memorandum in further support of its Application pursuant to 28 U.S.C. § 1782, permitting it to obtain discovery from GGIC, GFP Management and Tribone, for use in proceedings pending before tribunals in the Cayman Islands and Peru.[1]

## PRELIMINARY STATEMENT

In its opening memorandum of law, Nexstar demonstrated that: (a) there is compelling evidence that Guggenheim and one of its agents, Rodriguez, misappropriated almost $10 million from ESM by, among other conduct, the issuance of the L/Cs; (b) ESM is a Peruvian electricity distribution company in which Guggenheim and Nexstar have a joint investment; and (c) evidence of this misappropriation is critically important to two pending proceedings in Peru and the Cayman Islands. Indeed, on November 1, 2010, in a letter to Cayman Islands counsel for GFP Dunas, Nexstar's counsel once again explained the importance of this evidence and requested that GFP Dunas provide answers to just seven questions:

1. Did any of Guggenheim Partners, LLC, Guggenheim Franklin Park Investments, LLC, Guggenheim Franklin Park Management, LLC, Guggenheim Global Infrastructure Company, Ltd. or any other related or affiliated entity (the "Guggenheim entities") ever have any (and if so what) direct or indirect interest in QV Americas and/or Marañon and/or a concession for a proposed hydroelectric project on the Marañon River in Huánuco, Peru?

2. If so, in relation to each such Guggenheim entity, for what period was such interest held and how, when and to whom was it transferred or disposed of?

3. Was Ismael Rodriguez ever an employee, contractor, agent, office holder or other representative of any Guggenheim entity in connection with Energia, ESM and/or Marañon?

4. If so, in what capacity did he act, and does he continue to be so engaged or appointed?

---

[1] Submitted herewith are the Reply Declarations of Michael Makridakis, ("Makridakis Reply Decl."); and Roberto Jesus Santivañez Seminaro ("Santivañez Reply Decl.") each sworn to on November 8, 2010. The defined terms used herein are the same as those used in Nexstar's opening memorandum of law.

5. If he does not continue to be so engaged or appointed, when and under what circumstances did he cease to be so engaged or appointed?

6. Please answer questions 3 to 5 inclusive, *mutatis mutandis*, in relation to Robert Venerus and Thomas Tribone.

7. When did:

    (a) Robert Venerus; and

    (b) Thomas Tribone

first become aware that Ismael Rodriguez had procured the issue and guarantee of the Letters of Credit as stated above, and how?

(Makridakis Reply Decl. ¶ 14 and Exh. 8)  All Nexstar seeks is the documents and/or testimony that will provide answers to these questions.  Not surprisingly, GFP Dunas has refused to provide anything.

Tellingly, however, in their opposition to the Application, 28 U.S.C. § 1782 ("Op. Mem."), Guggenheim and Tribone offer *no evidence refuting any of Nexstar's factual assertions*, including the improper issuance of the L/Cs and the misappropriation of funds from ESM.  Instead, in effort to divert attention from their conduct, they offer a number of baseless defenses which mischaracterize the record in both the Peruvian and Cayman Islands proceedings, as well as the nature of Nexstar's discovery requests.

First, Guggenheim and Tribone claim that the record in Peru is now sealed and further evidence cannot be submitted.  They are wrong, as evidenced by that fact that Rodriguez, Guggenheim's agent, has been adding documents to that record for weeks.  Indeed, the Peruvian statute that their expert cites is not even applicable to the current status of the Peruvian appeal (*i.e.,* the record is still with the trial court).

Second, Guggenheim and Tribone mischaracterize a hearing in the Cayman Islands and wrongfully contend that Nexstar sought to avoid discovery in that proceeding.  To the contrary,

Nexstar obtained the right to seek specific discovery and made its November 1 request to GFP Dunas – and not respondents here – pursuant to that right.  Further, any suggestion that GFP Dunas will ultimately provide meaningful discovery to Nexstar is flatly contradicted by GFP Dunas' gamesmanship in the Cayman Islands, which includes an express denial that Rodriguez has any relationship to GFP Dunas or its affiliates.  In any event, under both United States and Cayman Islands precedent, that some discovery might be possible in the foreign proceeding is no ground for opposing this Application.

Third, courts have rejected Guggenheim and Tribone's ploy of suggesting they would submit to Cayman Islands jurisdiction as inconsistent with the principles underlying Section 1782.  Indeed, if such offers were routinely accepted, the whole purpose of Section 12782 – to provide for discovery in the jurisdiction where the United States court is located – would be defeated.

Finally, Guggenheim and Tribone contend that Nexstar's discovery requests are overly broad and a "fishing expedition."  Nothing is further from the truth.  As noted above, Nexstar is willing to take whatever documents and/or testimony will answer its seven specific questions.

## ARGUMENT

### I. Discovery Obtained As A Result Of This Application Is Admissible In The Peruvian Proceeding

Guggenheim and Tribone's representations regarding the Peruvian proceeding leave out two significant facts.  First, as they are absolutely aware, under Peruvian law, the record in the Peruvian appeal remains open for the inclusion of additional evidence until the case is submitted to the appellate division by the trial court and listed for hearing in the appellate division.  In the Peruvian Action, the record has not been submitted to the appellate division by the trial court, and the record still remains open for the submission of additional evidence, such as the

documentary evidence Nexstar is seeking here.[2] In fact, Guggenheim's agent, Rodriguez, on behalf of ESM, has made additional submissions to the record since the trial court's July 19, 2010 order revoking its May 31, 2010 Injunction. (Santivañez Reply Decl. ¶¶ 4-6) Further, in an admission that the record is still with the trial court, GFP Dunas has sought and obtained an order requiring Nexstar to give it notice when the trial court ultimately does submit the record to the appellate court. (Makridakis Reply Decl. ¶ 2 and Exhs. 1 and 2)

Second, the Peruvian appeal is from a request for preliminary relief; an underlying action for permanent relief still exists, and Section 1782 discovery would clearly be admissible in that proceeding. (Santivañez Reply Decl. ¶ 4)

In any event, courts have warned against speculative forays into the laws of foreign jurisdictions in the context of Section 1782. In *In re Application of Euromepa, S.A.*, 51 F.3d 1095 (2d Cir. 1995), the Second Circuit rejected a lower court's analysis of French law based on a "battle-by-affidavit of international legal experts" and explained its reasoning as follows:

> We think that it is unwise – as well as in tension with the aims of section 1782 – for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law. Although "[a] grant of discovery that trenched upon the *clearly established* procedures of a foreign tribunal would not be within section 1782," *John Deere, Ltd.,* 754 F.2d at 135 (emphasis added), we do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges. Such a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the "twin aims" of the statute.
>
> Rather, we believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal

---

[2] Article 377 of the Peruvian Code of Civil Procedure, referenced in the Declaration of Juan Guillermo Lohmann Luca de Tena to support the contention that "no new evidence may be introduced in appeals, such as Nexstar's, in which the decision or order subject to appeal has been enforced (or is not suspended) pending the appeal's final adjudication," does not apply where, as here, the record on appeal still resides with the trial court. (*Id.*)

>would reject evidence obtained with the aid of section 1782. . . . Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in "providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects." *Senate Report* at 3783.

*Id.* at 1099-1100. *See also In re Application of Grupo Qumma, S.A. de C.V.*, 2005 U.S. Dist. LEXIS 6898, at *10 (S.D.N.Y. Apr. 21, 2005) ("The Mexican court, rather than this Court, should decide whether the additional evidence is admissible, and it will be in a better position to do so if Qumma is permitted to conduct the requested discovery first. If the § 1782 application were to be denied, Qumma would be deprived of any opportunity even to try to offer the evidence. I cannot say that I have been presented with 'authoritative proof' that the Mexican court would reject the additional evidence").

Here, Guggenheim and Tribone have submitted nothing even approaching "authoritative proof" demonstrating that the Peruvian court would not consider the Section 1782 discovery requested by Nexstar.

**II.      Deferring To The Cayman Islands Court Is
          Contrary To Fundamental Section 1782 Principles**

Guggenheim and Tribone's next contention – that this Court should reject Nexstar's Section 1782 application and simply defer to the Cayman Islands court – has no basis in fact or law and is a clear attempt to derail Nexstar's core contention in that proceeding, *i.e.,* that GFP Dunas and its affiliates have acted in bad faith, breached the Services Agreement and are not approaching the Cayman Islands court with "clean hands." (*See* Makridakis Repl. Decl. ¶¶ 12-13)

    **A.    Guggenheim and Venerus' Misrepresentations Regarding
            The Cayman Islands Proceedings Are No Defense Here**

5

First, Guggenheim and Tribone argue that Nexstar's Section 1782 application should be denied because Nexstar somehow opposed discovery in the Cayman Islands. Nothing can be further from the truth. In the Cayman Islands, two kinds of discovery are available, general discovery, which is broad and comprehensive, and specific discovery, which allows a party to request from its adversary documents addressing specific issues, such as the seven questions posed by Nexstar to GFP Holdings. Here, Nexstar received the right to request specific discovery from GFP Holdings, and on November 1, Nexstar made its request. Since GFP Holdings has refused to respond, Nexstar has sought judicial intervention. (Makridakis Reply Decl.¶¶ 7, 12 -18)

Further, Guggenheim and Tribone are particularly disingenuous in arguing that Nexstar's scheduled court date somehow demonstrates that Nexstar is not interested in the requested discovery because of its proximity to a yet unscheduled evidentiary hearing; as GFP Dunas counsel was informed at the last Cayman Islands hearing, the judge overseeing the Cayman Islands proceeding was going out of town and stated that the Court may not be able to address interlocutory applications until the evidentiary hearing.. If discovery is ordered, Nexstar will seek change in the timetable for the wind up hearings. (*Id.* ¶¶ 8, 18-20 and Exh. 5)

In addition, it is equally disingenuous for Guggenheim and Tribone to suggest that Nexstar will be successful in obtaining meaningful discovery in the Cayman Islands. As an example of the gamesmanship that Nexstar has faced there, Venerus and Tribone, on behalf of GFP Dunas, sent a letter to Nexstar taking the preposterous position that Guggenheim has no relationship to Rodriguez:

> Your suggestion that Ismael Rodriguez has acted as the agent for GFP Dunas is baseless and entirely false. Mr. Rodriguez is the President of the board of directors of ESM and is not an agent of GFP Dunas or any affiliate thereof,

6

>  whether in any formal sense or in the nefarious sense inferred by your correspondence.

(Getsinger Decl. ¶ 21; Exh. 11, p. 1)   Venerus and Tribone made this statement even though Rodriguez has provided Nexstar with marketing materials and business cards demonstrating that he was an employee of GFP Investments.  (Getsinger Decl. ¶ 3 and Exh. 1 & 2)

Nexstar seeks discovery in this jurisdiction, where GGIC, GFP Management, and Tribone are located.  It is possible that discovery will be obtained in the Cayman Islands, but the Cayman Islands entity, GFP Dunas, is solely a shareholder in the Joint Cayman Co., and Nexstar seeks discovery regarding, among other things, Guggenheim's relationship to QV Americas and Marañon.  That discovery is most likely located here, where Guggenheim is headquartered.[3]

In any event, whether Nexstar's requested discovery is or is not available in the Cayman Islands is immaterial.  As demonstrated in the Op. Mem. (pp. 19-20), there is no requirement that Section 1782 discovery be available in the foreign tribunal, *see Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S 241, 260 (2004) ("[N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there"), and the Cayman Islands courts have stated that the possibility of discovery in their jurisdiction is no ground for opposing Section 1782 discovery, *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited,* 2009 CILR 553, 575 (Ct. of App. Sept. 24, 2009) ("[P]rima facie a party who can invoke the jurisdiction of the US District Court under §1782 may choose to do so. . . .  The relevant question is not whether Phoenix could achieve a similar result in the Cayman Islands but whether (if it could) it is acting

---

[3]   Further, the possibility that Nexstar will be able to cross-examine Tribone at some final hearing is *not* pre-trial discovery.

oppressively or abusively in seeking to rely on the right it enjoys under U.S. law") (Makridakis Decl. ¶ 7 and Exh. 2 at 14).[4]

Further, there is no "exhaustion" requirement under Section 1782. *Euromepa, supra,* 51 F.3d at 1098 ("Relying on the plain language of the statute, this Court has also refused to engraft a 'quasi-exhaustion requirement' onto section 1782 that would force litigants to seek 'information through the foreign or international tribunal' before requesting discovery from the district court") (citation omitted). Nexstar can pursue discovery in the Cayman Islands and here at the same time.

### B. Guggenheim And Venerus Cannot Avoid Section 1782 Discovery With Their Untimely Offer To Consent To Cayman Islands Jurisdiction

In another attempt to avoid Section 1782 discovery, Guggenheim and Tribone offer, for the first time and at this very late date, to consent to the jurisdiction of the Cayman Islands court. However, such a ploy undermines the whole purpose of Section 1782. As one court has explained:

> Based on the Court's consideration of the factors listed above, the Court determines that some discovery is appropriate. . . . Notably, Respondents state that they will refuse to cooperate in the foreign proceedings if this discovery is allowed, while at the same time claiming that they fully support the foreign

---

[4] Guggenheim's cited cases, *In re Application of Caratube Int'l Oil Co., LLC,* 2010 U.S. Dist. LEXIS 81512 (D.D.C. Aug. 11, 2010) and *Kulzer v. Biomet, Inc.,* 2009 U.S. Dist. LEXIS 101283 (N.D. Ind. Oct. 29, 2009), are inapposite. In *Caratube,* the Section 1782 applicant voluntarily initiated arbitration, and the court noted: "Parties to an arbitration are free to set the procedural rules for arbitrators to follow. This Court is reluctant, then, to interfere with the parties' bargained-for expectations concerning the arbitration process" (citations omitted). *Id.* at *12-13. In *Kulzer,* the Section 1782 petitioner expressly stated in its petition "a desire to be free of the burdens and restrictions of the German court." 2009 U.S. Dist. LEXIS 101283, at *15-22. In denying the petition, the court stated, "[w]hile not necessarily rising to the level of bad faith, Heraeus' statements and actions, taken together, lead this Court to conclude that Heraeus' application for discovery borders on an effort to improperly circumvent the more limited discovery rules of Heraeus' chosen forum in Germany." *Id.* at *22. This is not an arbitration, and Nexstar is not circumventing any discovery mechanisms.

> defendants and would consent to foreign jurisdiction should this Court refuse to allow discovery. This would leave Petitioner in the position of allowing Respondents to participate in the foreign proceedings, in support of their opponents, while leaving no recourse for Petitioner should Respondents later refuse to cooperate with Petitioner. More importantly, this is not the standard contemplated by Section 1782, and it underscores the propriety of allowing discovery in the Court that maintains jurisdiction over that party. *See In re Gemeinshcaftspraxis Dr. Med. Schottdorf,* No. M19-88, 2006 U.S. Dist. LEXIS 94161, *18 (S.D.N.Y. Jan. 4, 2007) (noting that the proper inquiry includes the interested party's need for discovery, not simply the foreign tribunals' need for the discovery).

*In re Application of Michael Wilson & Partners, Ltd.*, 2007 U.S. Dist. LEXIS 54624, at *8-9 (D. Colo. Jul. 26, 2007). *See also Euromepa, supra,* 51 F.3d at 1099 ("We think that it is unwise – as well as in tension with the aims of section 1782 – for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law"); *Gemeinshcaftspraxis, supra,* 2006 U.S. Dist. LEXIS 94161, at *19 ("[w]hen the target of discovery is not a party the foreign tribunal may be less inclined – even if it is empowered – to compel third-party discovery. . .").

And once again, forcing Nexstar to go to the Cayman Islands to seek discovery located in this jurisdiction with only the dubious "consent" of Guggenheim and Tribone would violate the principles of the well-established "no-exhaustion" rule. *See Euromepa, supra.*

### III.     Nexstar's Application Is Not A "Fishing Expedition" Or Overly Broad

Lastly, Guggenheim and Tribone erroneously contend that Nexstar is engaging in a "fishing expedition" and that its discovery requests are "overly broad." A fishing expedition is "discovery sought on general, loose, and vague allegations, or on suspicion, surmise or vague guesses." BLACK'S LAW DICTIONARY, at 326 (5th Abr. Ed. 1983). Here, Nexstar requested limited discovery regarding Guggenheim and Rodriguez's actions with respect to ESM and Marañon. Nexstar is willing to negotiate over the most streamlined way to receive that evidence.

9

*See, e.g., In re the Application of Minatec Finance S.A.R.L.,* 2008 U.S. Dist. LEXIS 63802, at *12 (N.D.N.Y. Aug. 18, 2008) ("The Second Circuit has consistently ruled that it is far better to provide federal court assistance [under Section 1782] than none at all").

## CONCLUSION

For the foregoing reasons, and those set forth in Nexstar's opening memorandum, this Court should grant the Application in its entirety.

Dated: November 9, 2010

Respectfully Submitted,
NEXSTAR ESM HOLDINGS (CAYMAN), LTD.

By: /s/David A. Rosen
David A. Rosen
VA Bar No. 44494
Richard A. Lash
VA Bar No. 25723
Buonassissi, Henning & Lash, P.C.
1861 Wiehle Avenue, Suite 300
Reston, VA  20190
(703) 796 – 1341 x 1104/1110
(703) 796 – 9383 (fax)
rlash@bhlpc.com
drosen@bhlpc.com
*Of Counsel to Plaintiff*

Of Counsel to Plaintiff:
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Michael M. Fay(mfay@kasowitz.com)
Thomas B. Kelly (tkelly@kasowitz.com)
1633 Broadway
New York, New York  10019
(212) 506-1700

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 9th day of November, 2010, a true copy of the foregoing Reply Memorandum, with its attachments, was mailed, first-class postage-prepaid, and/or served via the Court's ECF system to:

| | | |
|---|---|---|
| KOBRE & KIM LLP<br>Steven G. Kobre, Esq.<br>Danielle L. Rose, Esq.<br>Carrie A. Tendler, Esq.<br>800 Third Avenue<br>New York, New York 10022<br>Tel: +1 212 488 1200<br>Fax: +1 212 488 1220<br>steven.kobre@kobrekim.com<br>danielle.rose@kobrekim.com<br>carrie.tendler@kobrekim.com | - | *(Admitted Pro Hac Vice)*<br>*Counsel for Guggenheim*<br>*Global Infrastructure*<br>*Company, Ltd.;*<br>*Guggenheim Franklin Park*<br>*Management, LLC; and*<br>*Thomas Tribone* |
| DIMUROGINSBERG PC<br>John M. Tran, Esq. (VSB# 24349 )<br>908 King Street<br>Suite 200<br>Alexandria, Virginia 22314<br>Tel: +1 703 684 4333<br>Fax: +1 703 548 3181<br>jtran@dimuro.com | - | *Local Counsel for*<br>*Guggenheim Global*<br>*Infrastructure Company, Ltd.;*<br>*Guggenheim Franklin Park*<br>*Management, LLC; and*<br>*Thomas Tribone* |

                                                    /s/David A. Rosen
                                                   David A. Rosen